And, uh, Son, uh, we'll hear from... Oh yeah, Mr. Son, we'll hear from you first. May it please the court, I'm Paul Son. Kelly Dagger and I represent Antonio Tillman. Mr. Tillman and 14 others were charged after a lengthy FBI investigation, an operation called Operation Rockfish. Operation Rockfish was a reverse sting operation intended to identify and then prosecute crooked cops in some counties in North Carolina. Antonio Tillman was a police officer for the town of Windsor. He was not a crooked cop. There was no evidence, no evidence, that Mr. Tillman had ever been involved in any illegal activity. The 14 other defendants charged all pleaded guilty. Only Mr. Tillman went to trial. He went to trial because he said then, I'm not guilty, and he says now and maintains he is not guilty. Operation Rockfish set up a fake drug trafficking organization, this reverse sting operation, with the idea to uncover, identify, and prosecute public corruption. It was a public corruption investigation. And again, Mr. Tillman was a police officer for the town of Windsor. What the mayor of Windsor said about Mr. Tillman is that he was a good police officer, Mayor Hoggart. What Chief Lane, the police chief of Windsor, said of Mr. Tillman is he was shocked. There was an allegation that Mr. Tillman was supposedly involved in drug trafficking. The charges against Mr. Tillman, all the charges, including the public federal programs bribery charges, all arise out of three trips that Mr. Tillman and others took from Rocky Mount to points in Maryland transporting fake drugs. What were fake drugs? August 20, 2014, October 22, 2014, and March 26, 2015. The government charged that on each of those dates, Mr. Tillman violated Section 666, 18 U.S.C. 666, A1B, federal programs bribery. And we've contended and continue to contend that the government's proof failed to show the elements of that offense. The elements include, first, an agent of a, in this case, a town, and Mr. Tillman was certainly an agent, that he corruptly accepted anything of value. There was evidence in the record that on each of these three trips, on the first trip, he received $2,000. On the second trip, he received $2,000. On the third trip, he received $2,500. But the first failure of proof we contend is on the element that the defendant, Mr. Tillman, corruptly accepted the thing of value, the payment, intending to be influenced or rewarded in connection with the business, the transaction or a series of transaction of the town of Windsor. The government's proof failed there. The government's proof also failed in showing that there was a value of $5,000 or more associated with that business transaction or series of transactions for the town of Windsor. So if the transactions in this case had occurred within the town limits of the town of Windsor, that's where he met and picked up the fake heroin, would that change your argument? It would, Your Honor. That would be closer. The one case the government cited in support of its contention that they established the federal program's bribery charges was a Seventh Circuit case called Robinson. And what happened in Robinson is there was a bribe to a police officer to not investigate, a Chicago police officer, to not investigate some drug trafficking operations that were going on in Chicago where that officer had authority. Mr. Tillman's authority to exercise his police authority was limited to the jurisdiction of the town of Windsor. The business or transaction he had... but what if the officer was transporting somebody from his holding cell up to Congress to testify? And so the officer took the man out of his cell, drove him up to Washington, had him testify, and then brought him back and put him in the holding cell. That would be a legitimate function of the officer, wouldn't it? It would. All right. And if, instead of taking the witness up to Washington to testify, he took the witness up and took him to an airport, got paid $5,000 and let the defendant go away, that would be abuse of his authority, wouldn't it? Agreed, Your Honor. Well, it seems to me when an officer is engaged, because he's an officer, he has a badge, a uniform, credentials, there is a benefit that the drug dealers would get from having the police officer escort the drugs on an interstate highway up to Maryland. And the fact that he was out of his jurisdiction surely meant he couldn't arrest, he couldn't do other types of things, but certainly if he were carrying official cargo, he was carrying supplies or he was picking up ammunition or escorting a witness, that would be legitimate. In this case, he's escorting drugs. Of course, fake drugs would sting, but I'm assuming from his point of view it's drugs and he's getting paid for that. Isn't that an abuse or corruption of his authority? Your Honor, the difference in your hypothetical is the local government, wherever the prisoner was located, has an interest in securing that prisoner, maintaining that prisoner's security. My only point was that it's not jurisdictional based on the fact that in my two hypotheticals on the witness, he lets the witness go up at Dulles Airport instead of taking him to testify because the witness paid him off. And in the first instance, if he takes him to Washington and brings him back, that witness, that person in the holding cell, the person being held, it's his authority to hold him in custody and maybe to protect him too, whatever the case may be. But he's exercising official authority to do that. When he abuses that authority and gets paid off and releases the prisoner at Dulles Airport to flee, he's now been corrupted in that authority. And in both cases, he's operating out of the jurisdiction where he could conduct arrests and so forth, but he still has an interest because the witness happens to be in his custody in the holding cell. And so he has the interest wherever he takes that person. Or if he's told by the police chief, I need some supplies, I need some ammunition that's up in Northern Virginia, they make it up there in this little town, we need 20 pounds or two boxes of this. They send him up and bring him back. He's on official business. Now if he goes up there and instead of bringing the two boxes back, he only brings one box back and sells the other to somebody, he's corrupted in his office. I'm not sure that gets you very far. I think your value in the bribery issue is a serious point. You contend that the $2,000 could be underestimated, but the government didn't come in with any evidence to show that the value of the services was more than 5,000 or more. You make that point on counts 32, 36, and 54. Yes, sir, Your Honor. But before we leave that first point, it seems like to me your argument on the statutory language of in connection with any business of the town is basically a state law arrest authority argument. If it were a North Carolina highway patrolman who did have statewide authority, you couldn't make that argument. But your argument basically is, as I understand it, that the defendant didn't have arrest authority in the location where he picked up the drugs, therefore it could not be the business of the town. Meaning the town did not have an interest. Meaning that it was not the business or a transaction or a series of transactions of the town of Windsor. Yes, sir, Your Honor. All right, so tell us why the subject matter of the bribe, that there wasn't evidence that it had a value of 5,000 or more. I will, Your Honor. First of all, it's fake drugs. So there's no value in the drugs themselves. But what the case law says is when there are instances when the bribe payment itself can substitute... I think that first point doesn't help you. I think what would help you is the fact that he didn't buy or sell drugs. He was basically being hired to provide protection and for some pre-existing drug order. Your argument would have to be that the nature of the bribe is the value of the protection.  And what the government says is a couple of things. It says you can count everybody. You can count not just Mr. Tillman's 2,000 or 2,500. Again, the town of Windsor. It has to be value associated with the business transaction or series of transactions for the town of Windsor. Why do you say that, though? I mean, it says the thing of value of $5,000 or more. Why does that have to be? I mean, that's the subject matter of the bribe, which in this case would be the fake dope. Well, the word, the applicable word in the statute is involving and it ties back to the business transaction or series of transactions, Your Honor. We're only using the bribe payment as a substitute. And what the case law has said is you can do that in instances where, I mean, you don't have a contract. It's an intangible thing. What's it worth? We don't have a contract unless, and Judge Niemeyer, I think this is your point and I accept it gratefully. The value of the contract to guard the drugs, if that's what the government is contending, is what it paid to Antonio Tillman. Well, that's evidence of it. They could have underpaid. My point was that the drugs themselves, you didn't make this distinction, but he was not buying drugs or selling drugs. He was providing protection for drugs that were owned by somebody else. There was no transaction. They were being loaded into a truck and he was providing the protection. The bribery was to pay him for the protection created by his credentials and his badge and that type of thing. And I don't know if you've focused in on that or, I mean, the government can clearly argue that $2,000 was an underpayment for that protection and actual value was much more. But the question I guess you must raise is whether the record shows what that is or lets the jury simply speculate. The only evidence, again, Your Honor, the only evidence was what was paid to Mr. Tillman. And a key here is that each trip was charged separately. So you can't aggregate $2,000 plus $2,000 plus $2,500 to get over the $5,000. Well, why couldn't you aggregate what was paid to the whole collection? Because that was the protection for each individual trip if you're going to look at it that way as opposed to the valuation of the dope. Your Honor, again, it has to go back to the town of Windsor. Only Mr. Tillman is an employee, an agent of the town of Windsor. It has to be except something of value intending to be rewarded or influenced in connection with the business transaction or series of transactions involving that business transaction or series of transactions for the town of Windsor of a value of greater than $5,000, $5,000 or greater. And it's just, it's not there. The only evidence, and Judge Niemeyer, thank you for this point. The only evidence in the record is the evidence of what Antonio Tillman was paid. And you can't, we respectfully contend, Judge Agee, you can't aggregate because those aren't interests associated with the town of Windsor. No one else is an employee or an agent, in this case, a police officer of the town of Windsor. Your Honor, again, this was a public corruption case. There wasn't a public corruption. That's your read on the language of the case. I mean, do you have a case that says that? Well, the... Anything besides just that's your take on the language? Well, I mean, the title of the statute is Federal Programmed Bribery. That's the statute that he's charged under. That's 18 U.S.C. 666. And so, yes, I think the statute itself says that's what the charges were about. And again, it's undisputed. Agent Spears, the FBI agent who was in charge, that's how they got started. The reason they got started was to investigate and then prosecute if it was proved to be the case that there were crooked cops, that there was public corruption going on. Thank you. Can I ask you, before you step down, if I may, so what's the end result if we agree with you with respect to the three counts relating to programmed bribery? Weren't those... Didn't the judge separately enter sentences to each of these counts? So what's the end result? Respectfully, Your Honor, it would not affect... We think it would not affect the sentence that was imposed by the district court. And that's why, and I'll address in my rebuttal, why we contend, particularly the charge in count 48, the one drug possession count that the district court didn't decide on its own as a matter of law, that there was insufficient evidence, that there was insufficient evidence there, and that would have a sentencing impact. Thank you, Your Honor. Well, just to amplify there, that tale didn't answer Judge Diaz's question. The question is, if the government failed on counts 32, 36, and 54, and we reversed those counts, it would not affect any sentence, and we would just vacate those convictions, right? I thought I did answer that. Yes, Your Honor, that was my point. And the only consequence is the arguments with respect to the other counts, 1, 2, 48, 49. In connection with the effect on Mr. Tillman's sentence. Yes, Your Honor. Thank you. All right, Mrs. Ranga Rajan. Ranga Rajan, Your Honor. Ranga Rajan. Thank you, Your Honor. Your Honor, with respect to... Let me back up. Pauline Ranga Rajan on behalf of the United States in this matter. With respect to the questions the courts were asking about what kind of value, the bribe in this particular case, the in connection with the business or transaction of the agency, the town of Windsor, if the value exceeded 5,000, how do you put a value on the misuse of law enforcement authority? This is a specific matter of the bribe. Is it the protection provided or the drugs? It is the protection provided. He was paid for his badge, his credentials, and his gun to guard the shipments from North Carolina to Maryland. All right, the jury had evidence of 2,000, 2,000, and 2,500 on those three transactions charged. With respect to the defendant? With respect to this defendant. He was charged in these three counts, 32, 36, 54. And his only evidence of actual value is 2,200 and 2,500. Now, it could be valued at more, but where is the jury going to, what's the jury going to do other than speculate? In other words, I couldn't find anything where you gave the jury any guidance as to what value it could derive to assure itself that the value of that protection was 5,000 or more. Well, the value of the heroin transaction in the March 26 shipment was a million dollars. The payments... No, I think you just answered Judge Agee, and I thought you answered him correctly, that the value of what was received in the quid pro quo was the protection, based on the badge and the credentials. The protection... And the value of the protection is what they corruptly purchased. And if I could clarify, the value to the agency was the misuse of its authority, the misuse of police authority. And we don't have a value. It's intangible. And so the case law says when it's intangible, when you cannot measure the impact, you can look at other sources to measure value. Well, why would they take $2,000 if it was intangible? That is evidence of what the market gives. It may be the wrong, you can argue that it's an underpayment, it's a bargain, but if it's the only evidence, and he's willing to accept it, it's a bilateral deal, the bribe was $2,000, and the question is, if it's quid pro quo, you would assume they got $2,000 of value unless you showed otherwise. The evidence was that it was more than $14,000 because the defendant was paid in connection with all of the other officers. Yeah, but you charged him count by count. And you look at the count and say were the elements of that count satisfied? And on count 32, it's a single transaction for which $2,000 was paid to this defendant. Now, that is all that's charged. Did you meet your burden on that count, not the other counts? The counts themselves, Your Honor, do not specify the amount that was paid to the defendant. The statute says it. The statute says it has to be $5,000. And the government's evidence was that the value of that misuse of authority, the guarding of the shipments, the protection detail, exceeded $14,000 because that's what the officers were willing, the undercover operation was willing to pay the collective team, not just the defendant, his entire team of law enforcement officers. So somehow this defendant gets imputed with... Yes, Your Honor. The value of the... But as the court noted... Tell me how that works. He's in a con... Or he actually drove during the second one, didn't he? He drove the Acadia in the second one and he was... And he was alone when he drove it? He was with one other person, Your Honor. Did the other person get paid? Yes. Every one of the team members got paid. And so there was $14,000 paid approximately in the Ferris wheel that's on the videotape. There was another $14,000 total paid on the second trip and approximately $14,000-$15,000 paid to all of the individuals as they individually got into the Corvette in the last one. In the second transaction, October 22nd, all of them were paid together in the van. So you charge Defendant A with violating 666 and being paid $2,000 for that and you believe that you can value that based on what all the others were paid who were also charged separately in separate counts.   Only the police officers were charged with 666. So you charge Defendant A with violating 666. Yes. And how many police officers were there on each transaction? With respect to the two. Each transaction was different. But they were with different law enforcement agencies. Let's take 32. What's 32? Count 32. What's it charge? It charges federal program bribery, fraud in connection with the August 20th, 2014. I believe it was a corrections officer. So I believe you're correct. Did she get paid? She got paid $3,500. So you're saying that because he got charged with providing service, the defendant in this case got providing service, the value of what he got paid for can be determined by what was paid to somebody else too? In order to value the intangible, the government would submit that you can look at the amount of bribe or was willing to pay the entire team. The jury told that? The jury received evidence that everybody of the payments that were given, the 14,000 payments for the first trip, the payments given in the second. Was the jury told by argument or instruction or otherwise that when you look at this element involving anything of value of $5,000 or more, you can add all of the bribe payments on a particular date No, the jury was not told regarding the aggregation ability. The jury was just told by the court that... So you didn't argue that it wasn't part of the instructions from the jury? The government argued that it was $1,000,000, Your Honor. That's how you valued it. It was a $1,000,000 shipment. Well, did you ever argue before the jury in regard to if it wasn't $1,000,000 that there was an alternative value that the jury could ascertain? I do not believe that our specific instruction like that was requested by the trial team, Your Honor. There was no objection from defense counsel nor the government to the instruction given by the judge and the judge did not specify aggregating. I can't figure out why. Your Honor, Judge Antonio Tillman accepted something of value of... involving something of value of $5,000 or more. Namely, he agreed to accept cash from undercover law enforcement agents posing as members of the drug traffic in order to be influenced and awarded in connection with protecting shipments of purported narcotics. So you allege that Antonio Tillman was paid a bribe in order to provide he, to provide protection of the shipment. Right, so he was paid. The bribe was $2,000, Your Honor. I know, but this count requires that the amount 666A1B requires that the amount be $5,000, a value of $5,000. Not that the bribe has to be $5,000. No, not the bribe, the value of what was the quid pro quo. Right, and the question is in this particular case how do you value the misuse of public police authority? We can discuss that hypothetically. My question was, was the jury given any number other than the $2,000? With respect to, with respect to him, no. Antonio Tillman on $32,000. That is, no. With respect to what he received, no. But with respect to what everybody in the participating, yes. So, Your Honor, given that my time... Is that the way, is that the way we're supposed to construe the statute that we can look at the other counts? I mean, what if they were all acquitted and he was charged on this one? What would your answer be? Now, let's just take that first transaction, the first shipment. He gets paid $2,000 for providing protection and he's convicted. All the others are acquitted for some other reason. So there's no, you don't have any other counts. What do we do now? Again, you would have to look at other ways to value it. In the... I understand, but in this case, based on what was in this case, the value of the drug. You didn't put any other value on. The value of the drugs, the value to the briber of protecting that shipment. You didn't buy the drugs. But he was participating in the drug trafficking operation. In the Robeson case... Except the bribery was the quid pro quo. It wasn't, you charged him otherwise for the drug trafficking. He's not charged in this count with any drug trafficking. He's charged in this count with providing protection to an organization shipping drugs. And the question is, what is that protection value? Drug protection. That protection is, if you cannot put a number on the intangible from the agency's perspective, the courts have said you can look at it from the briber... What's the best case you have? The Marler... I cannot pronounce it right now. The Marmelejo case in which the court valued the conjugal visits from the point of the prisoner who was how much the prisoner was willing to pay for the conjugal visits and determined that it exceeded $5,000. So with respect to that $1 million statement, that was only with respect to one of these trips though, right? That was with respect to the March 26th. So it wouldn't help you with respect to the other two trips, would it? Well, there was testimony that there was 10 key packages in each of them. They were... We recognize that they were acquitted, but you're correct, Judge. There isn't... You would have to go again to... If there's not sufficient evidence of the million dollars worth of drugs, you would have to go to what other way to measure it. And if we're not... Is it value? Is it cost? Is it profit? I mean, what's value? It would be profit or... I mean, it's an intangible... What was the evidence of any profit? It's an intangible again. With conjugal visits, how much is it worth to the person for a conjugal visit was $1,000 and $5,000. With respect to the drug... How did they... In that case, I'm not familiar with that case, but in that case, how were the conjugal visits valued? The deputies were paid $5,000 up front and then $1,000 after that for every conjugal visit. And so they measured the conjugal value based on what they had and what the prisoner was willing to pay for the visits. Okay. Well, let's stay with that then in this case. But there was... What was the... In this case, the parties were willing to pay $2,000 for the protection. It involved two deputies who received the payments. In this case, the parties were willing to pay for the... The other deputies quit it. We can't use that. Okay. So with respect to the August... Count 32. Count 32, there was $14,000 paid. If you cannot... If the court is unwilling to look at what was paid to all of the participants, even if they were acquitted that there was $14,000 paid, then that leaves the $2,000 left with the defendant, Your Honor. And in that case, then, he could not be convicted under the statute. If the court concludes that the value did not exceed $5,000, that is correct. Well, not... We wouldn't conclude. The question is what evidence is legitimate for consideration under that count. I think it is still relevant what was paid to the other folks. If he was aware that $14,000 were paid and he was convicted of it... Your argument is that the protection in the aggregate, the protection in the aggregate is worth $14,000. And what he received in his quid pro quo is therefore $14,000. The value of the transaction, if you valued it to the city, was at least $14,000. Yes, Your Honor. But given my shortness on time...   So, I'm not aware of any... Do you have any case that supports that that the defendant was convicted under the statute of $14,000? No. No. No. So, is that theory with respect to aggregating the total number of bribes in this case? Or would we be making new law? The Court hasn't spoken on it. Okay. And so... The Court... What about other courts? The Fourth Circuit hasn't spoken on it. What about other courts? And the other cases that have addressed it have not had this situation. It is a unique situation that the Court is facing. All right. But the argument that you are advancing now on aggregation is not an argument that was made until you got to the Fourth Circuit. You got up here. Your Honor, the judge found... The judge actually made a ruling based on that. He calculated that the value was at $14,000. So, that was the judge's conclusion. And, yes. So, we would advance. In the order... For acquittal? Yes.  the Court's correct that if the Court... I want to move quickly to the sufficiency of the evidence in this case. Because that is where the real evidence is. The evidence that the judge sentenced him on is the $180,000. That is what supports the conviction and the time that the defendant is serving in this case. Any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the drug and trafficking offenses in this case.  If we were unwilling to read the statute the way you are suggesting and had to strike the convictions under $32,000 and had to strike the convictions under $32,000 and had to strike the convictions under $32,000 to lead to $36,000 or $54,000 how should we do... Should we just reverse them and that ends the case? With respect to those three Your Honor... And make them send it back? With respect to those three Your Honor if the Court concludes that we didn't yes you would just reverse those convictions and you would not have to... You agree with the defendant then on that? You would just vacate those convictions, yes. You would just vacate them. If the Court has not already done so the Government would commend viewing the video evidence that was submitted in the supplemental joint appendix. The video evidence in this case is incredibly powerful evidence that the jury had and any rational trial... If I look at it my computer wouldn't read it. I need the password. Oh we will... I will make sure that the Court can has access to it and we will get you that. I was very interested because I had popcorn ready and everything. Well the video evidence is so powerful. It's what the jury saw but it's powerful because it gives you a visual chronology of the defendant's actions and reactions as this drug conspiracy unfolds over a period of seven months. But that's not the only evidence that this jury had. The jury also had audio tapes from the meeting in August 19th. It had testimony from the undercover officers. It had the defendant's own testimony and his denials which they obviously by their verdict rejected. And it had the testimony of co-conspirators in the case. Each of which builds together to support the  the evidence. The most critical video is the March 26, 2015 video which is the third of the three operations. And in that video there is the defendant standing facing the tailgate        And the defendant is standing facing the tailgate of the pickup truck where the drugs had been previously sold. And  defendant   facing the pickup truck where the drugs had been previously laid out. He's within 10 feet of her. They're all talking and shortly thereafter responds that he does have a video of the pickup truck where the drugs are sitting out. There's 10 that are wrapped in green and 10 that are wrapped in brown. Later there's testimony that brown goes to New York and during that time in the office they're talking about whether or not folks have guns and he hands a gun to another one of the team members, puts it in her back pocket or her pants. They walk out. He gets into one of the trucks with four semi-automatics and a long gun to guard another shipment. So all of that evidence, that video and the evidence, even though the court dismissed the August 20th and the October 22nd substantive charges, all of that evidence and all of that knowledge and reaction is relevant to the drug trafficking offenses and the firearms and furtherance of the drug  offenses, both substantively and the conspiracy counts. Briefly, Your Honors, with respect to the evidentiary issue, there was no abuse of discretion in this case in admitting that the videotape that came in after the defendant had testified, after he put in issue, his knowledge regarding the operation, what it was designed for, after he denied any knowledge that there was criminal activity. It was not unfair prejudice to let it in. Any prejudice from it definitely did not substantially outweigh the probative value of the evidence. The court did not abuse its discretion after conducting the balancing test and admitting that evidence during the cross of the defendant. I'm running short on time, so unless the court has any further questions, I will rely on my briefs and ask the court to affirm the convictions. Thank you. Thank you. Mr. Son. Let me before we get into what you have to say, the government makes an interesting argument. That is the protection that was provided for each shipment was say for the one $14,000. That's the protection they paid. And in that the protection was provided by multiple people of which your client was only one person and his share of the $14,000 was $2,000. But what was involved is the overall protection and therefore the protection had a value, a quid pro quo value of $14,000. What do you say to that? Three points there, Your Honor. First of all, to the court's point, there are no and I think counsel admitted there are no cases allowing aggregation. Aggregation may be, that's probably my fair because I think what they're saying is it's not aggregation. They're arguing it's a single protection. In other words, it's a single service and the value of that service is $14,000. That's what they had to fork out for the protection. And in this case, the defendant provided that protection. He was part of the team that provided protection, was being charged for providing that $14,000. I mean, I understood. And, Your Honor, the statute answers that because, again, it has to be the business transaction or series of transactions of the City of Windsor and value The City of Windsor is fraudulently providing $14,000 of protection. It doesn't, Your Honor, because it's only Mr. Tillman who is an agent of the City of Windsor. The statute requires an agent receiving, accepting, corruptly accepting a payment, intending to be influenced in connection with the business transaction or series of transaction for, in this case, the City of Windsor, involving having a value, that business, and, Your Honor's point, the City of Windsor's interest in not having its police officer act corruptly. The only value to that is Let me ask you if the statute says series of transactions, and this is one of a series, can't we focus on the series? No, Your Honor, because each count is charged separately. I understand, but the statute still, each count, 32 says, if he participated in a series of transactions involving 5,000 or more. As, Your Honor, That's what the statutory language says. It does, Your Honor, but count 32, for example, is on August 20th. I understand that happens to be one of a series. But that's the charge in count 32. Okay. If I might, Your Honor, I do want to highlight again the one possession, or attempted possession count, which is 48, as to which the district court did not already decide there was insufficient evidence as a matter of law. So possession with intent to distribute heroin or aiding and abetting on March 26th. And it has to be attempt because, again, it's fake drugs, and so that's why it has to be attempt. And to prove intent, there has to be specific intent, and counsel's argument, I would say, all goes to specific intent. But then there has to be a substantial step toward completion that strongly collaborates at intent. Mr. Tillman didn't do anything on March 26th to strongly collaborate his intent to possess with intent to distribute the drugs. He didn't touch the drugs. He didn't load the drugs. He's part of the operation. He's protecting a drug distribution operation. Your Honor. And the distribution is going on, as a matter of fact, and he's participating in the distribution. Your Honor, respectfully,  evidence as to what anyone involved was supposed to do or not do. Protect the drugs from the town up to Maryland. No, Your Honor. What he was supposed to do. Respectfully, Your Honor, he's not given any job unless he is driving or in the car with the drugs. I mean, what if he's a lookout? What if he's on a cell phone and warning people to protect the drugs? He can be in his house and protect those drugs. If they told him to do that, they instructed him about badging and using his credentials. Your Honor. And then he saw the drugs. You don't think he, you're giving credence to the fact he said I didn't know there were drugs. May I answer that question, Your Honor? Yes. At Joint Appendix 571, this is Undercover Agent Lisa talking about using your badge. And she says, you use your badge to get out of law enforcement interaction with the vehicle containing the drugs. That's when he would use his badge. That's what he's providing. You don't think he's assisting in the distribution? Your Honor. I mean, that's about his plainest day. It's not even an attempt. He's actually assisting in the distribution of drugs. Your Honor, he rode in a car, he rode in his truck. Why did he ride in the truck? To look at the scenery? Well, that's actually what he did on one of the occasions. He got up there and looked at the scenery. But he was asked to do that. He wasn't given any action to take. And if I could highlight one other point in the record. What did he think he was getting paid for? I mean, this almost reaches the absurd to say he was going along to look at the scenery. He saw drugs being loaded onto a truck. He was carrying his badge and a gun. And he's going up there and he's told, if you encounter the police, this is what you do,  badge. And he's there protecting drugs. And that's not assisting in the distribution of drugs? Not on March 26th, Your Honor, when he's not driving the car. It doesn't matter. He's providing assistance to the whole operation. Respectfully, Your Honor, we disagree. There isn't any evidence in that regard. Why did he get in the truck? What's your theory that he got in the truck for? Because he was asked to do that. So if I just asked him, do you want to get in the truck and go with me up to Frederick, Maryland, is that what he was doing? Yes. In fact, he didn't even know where he was going. No, he didn't know where he was going. He knew he was protecting drugs. They wouldn't tell him where he was   we don't have any evidence as to what Mr. Tillman was supposed to do or not do. Thank you. We'll come down to Greek Council and proceed on the next case. We'll take a short break.
judges: Paul V. Niemeyer, G. Steven Agee, Albert Diaz